**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 18-cv-00837-RM-KMT

KAITLYN DAY, an individual

    Plaintiff,

v.

THE CAREER BUILDING ACADEMY, a nonprofit organization,
RICHARD N. JOHNSON, an individual, and
JOY MORALES CRESS, an individual,

    Defendants.

---

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER OF JUDGMENT**

---

    Through no fault of Plaintiff Kaitlyn Day, she was sexually assaulted by an instructor (Robert Wilkerson) while she was a student attending one of The Career Building Academy's campuses. Mr. Wilkerson has pled guilty. At issue is whether any of the Defendants are liable under the theories pled for what occurred while Ms. Day was living on campus. Ms. Day contends the individual Defendants had actual knowledge of Mr. Wilkerson's inappropriate behavior toward her because a third-party (Kayleen McCabe) reported this to the individual Defendants. The individual Defendants contend that Ms. McCabe did not tell them about Mr. Wilkerson's conduct, and that if they had known they would have taken action against Mr. Wilkerson.

    The Court has examined the evidence, considered the parties' stipulations and other filings, evaluated the credibility of the witnesses, and analyzed the law, and is otherwise fully

advised after a bench trial held in this matter. In accordance with Fed. R. Civ. P. 52(a), the Court's findings of fact, conclusions of law, and order are as follows.

## I. FINDINGS OF FACT[1]

To the extent that any conclusions of law are deemed to be findings of fact, they are incorporated herein by reference as findings of fact.

### *The Parties.*

1. Plaintiff Kaitlyn Day (Ms. Day) is an individual who, at all relevant times, was a minor. Ms. Day's date of birth is July 8, 1998.

2. Defendant The Career Building Academy ("Academy") was a nonprofit organization with its principal office in Colorado Springs. Academy is not represented by counsel and the Clerk has entered default against Academy.

3. Defendant Richard N. Johnson was, at all relevant times, the founder and Chief Executive Officer of Academy. He resided in Colorado Springs at all relevant times.

4. Defendant Joy Morales Cress was, at all relevant times, the Executive Director of Academy. She resided in Pueblo West but worked in Academy's Colorado Springs office at all relevant times.

### *The Academy: Contract School and Charter School*

5. Academy's mission was to encourage students, including at-risk students and high school dropouts, to gain the required credits to graduate and to enter into a vocational program to learn skills that could lead to successful long-term employment.

6. Academy provided educational services to non-traditional students that may have

---

[1] The Court recognizes there may be a few inconsistencies between what the parties stipulated to and the parties' testimony at trial. For example, the parties stipulated that Mr. Wilkerson resigned September 3, 2015, effective September 14, 2015. During trial, Ms. Cress testify that Mr. Wilkerson resigned September 4, 2015. The Court finds any inconsistencies are immaterial to the resolution of the issues and claims in this case.

trouble succeeding in traditional school classrooms. Academy introduced at-risk students to a wide spectrum of career choices and provided workforce certifications. At-risk students are considered to have a higher probability of failing academically or dropping out of school.

7. Academy was initially only a contract school. It contracted with various school districts to provide services the schools did not have – vocational training – and received about $2,000-$2,500 per student from the school district. The school districts' funds included federal funds.

8. Sometime in 2014 or 2015, Academy decided to become a charter school. Academy signed a management contract with Youth and Family Academy aka YAFA, a charter school in Pueblo, to be the educational service provider for YAFA. The management contract was dated as effective June 5, 2015, but Academy did not start as a charter school until July 1, 2015, for the July1, 2015 to June 30, 2016 school year. Until that time, Academy would receive no federal funding as a charter school through the Colorado School Institute ("CSI"), the charter school district.

9. The funding for Academy would be sent from the Colorado School Institute to YAFA, and then YAFA would pay funds to Academy.

10. After the charter school contract was signed, Ms. Cress, Mr. Johnson, and Academy's school principals went through training for requirements of a charter school.

*Academy's Other Campuses and their Programs, Instructors, and Staff.*

11. Meanwhile, Academy already had campuses in Colorado Springs and Walsenburg, Colorado

12. Mr. Johnson and Ms. Cress were responsible for the supervision of Academy's programs, including the Walsenburg campus. They were Academy executives authorized to

receive a complaint about an Academy staff member engaging in sexual abuse or sexual harassment. Defendants Johnson and Cress did not frequently visit the Walsenburg campus as a general practice.

13. The Walsenburg campus had classroom training, a culinary program, and a construction program. It was designed to be a vocational-focused campus.

14. The Walsenburg campus was a residential campus with boy's and girl's dormitories. Out of town students at the Walsenburg campus resided on-site and slept in a dormitory. There was also a staff dormitory and a common area. The dormitory had security cameras.

15. At all material times, there were Academy staff onsite. These staff members were hired in or about August and September 2014.

16. Robert Wilkerson was Academy's primary construction instructor at the Walsenburg campus. Mr. Wilkerson was a vocational instructor and did not have a teaching certificate. He had no education, training, or prior experience as a teacher.

17. When school was in session, Wilkerson resided in the Walsenburg dormitory and was responsible for supervision of the boy's dormitory.

18. Dennis Hoyt, a licensed principal and superintendent, was the Walsenburg school principal. He was in charge of the day-to-day activities at the Walsenburg campus, and generally worked from about 9:00 a.m. until 5:00 p.m. daily.

19. Shirley Torres was the campus cook, Eddie West was the culinary instructor, and Carol Maldanado was the night supervisor.

20. Ms. Maldanado worked weekdays from 12:00 a.m. (midnight) until 6:00 a.m. and was responsible for supervising the students during that time period. There were times during the relevant time period, however, when Ms. Maldanado did not work.

21. At some point in time, Academy undertook the project of building a house for veterans and their families known as the Veteran's Community Living Center (the "Veteran's Project" or "Project"). Academy held a kick-off event to introduce the Veteran's Project on Saturday, May 2, 2015.

### *Ms. Day's Enrollment with the Academy and Stay at the Walsenburg Campus.*

22. On April 16, 2015, Ms. Day, an "at-risk" student, enrolled with Academy through the Peyton School District 23-JT vocational program. At that time Academy was a contract school with the Peyton School District.

23. Ms. Day was attending Peyton High School until May 2, 2015. On that date, Ms. Day began attending Academy at the Walsenburg campus and lived in the Walsenburg campus dormitory.

24. Mr. Wilkerson was one of the supervisors of the students, including Ms. Day, on the Walsenburg campus.

25. Mr. Wilkerson began a sexual relationship with and sexually assaulted Ms. Day while she was a student at Academy. At that time, Ms. Day was 16 and Wilkerson was 39 years old.

### *Ms. McCabe, the Veteran's Project, and Ms. McCabe's Knowledge of Wilkerson's Inappropriate Conduct Toward Ms. Day.*

26. Kayleen McCabe, a former cable television personality, produced and starred in programs that focused on construction. She is also a former "probation officer," with years of

5

training and education in sexual harassment and assault and of experience in handling at-risk youths.

27. After Ms. McCabe left cable television, she became familiar with Academy.

28. In about February, 2015, Mr. Johnson and Ms. McCabe met about documenting and filming the Veteran's Project. Ms. McCabe planned to work alongside the students while documenting the experience.

29. Ms. McCabe sought sponsors and Academy was seeking grants in which Ms. McCabe believed Academy was using her name or likeness as part of the grant process.

30. Mr. Wilkerson was the construction instructor on the Veteran's Project and Allen Dill was the general contractor. Mr. Dill was in charge of the plans and scheduling the work to be done on the Veteran's Project. He resided in Colorado Springs and divided his time between the Walsenburg and Peyton campus during the school/work hours.

31. On Saturday, May 2, 2015, Ms. McCabe, and her assistant and production crew (collectively, the "crew"), moved onto the Walsenburg campus to live there during the Project.

32. Ms. McCabe and her crew stayed in the dormitory, in a section different from the students and the staff. Ms. McCabe, however, did not live on campus every day.

33. While Ms. McCabe was on campus, she observed the following concerning Mr. Wilkerson and Ms. Day:

- Mr. Wilkerson favored Ms. Day over the one other female student and engaged in grooming behavior such as touching her a little too familiar;

- Mr. Wilkerson stated, in front of other students, that his breasts were larger than Ms. Day's breasts;

- One evening, Ms. Day and Mr. Wilkerson were watching a movie in the common area and Ms. Day was sitting across Mr. Wilkerson's lap in a "sexualized way" which Ms. McCabe "immediately recognized" as incredibly inappropriate.

34. Ms. McCabe also testified that Mr. Wilkerson was flirtatious toward her, called her one time to ask her out, and moved the camera in the dorm area toward her door after she turned it in another direction.

35. On Thursday, May 14, 2015, Academy had a graduation event in which Ms. McCabe delivered the commencement address for the Colorado Springs campus. Ms. McCabe came from Denver for the event.

### *The Meeting that Did Not Happen and Ms. McCabe's Abrupt Departure.*

36. Ms. McCabe testified about when and how she allegedly told Ms. Cress and Mr. Johnson about her observations concerning Mr. Wilkerson. Ms. McCabe's testimony consisted of the following:

- Ms. McCabe called a meeting for the entire staff for May 17, because they were missing construction deadlines left and right; students were leaving; permits were not being pulled; ground was not being broke; and subs were not being scheduled.

- Ms. McCabe, Ms. Cress, Mr. Johnson, Mr. Wilkerson, Mr. West (culinary), and Ms. Torres (the cook) were at that meeting. Mr. Dill did not attend the meeting.

- After a few hours, they took a break in the meeting, and Ms. McCabe took Ms. Cress and Mr. Johnson downstairs to an office and told them that Mr. Wilkerson was grooming Ms. Day, was a sexual predator, and was a pedophile.

- Ms. McCabe gave Ms. Cress and Mr. Johnson an ultimatum – Mr. Wilkerson had to go or she had to go ("either me or him"). Ms. McCabe made this ultimatum because, at that point, she had a few million dollar in trades ready to be put into the Veteran's Project and she was going to do a big open house with network executives. She knew that if Mr. Wilkerson was going to be around he would either abuse more kids or jeopardize her business.

- Mr. Johnson responded that he was picking Mr. Wilkerson because Academy needed Mr. Wilkerson for its programs to be successful and he was not going to fire Mr. Wilkerson.

7

- Ms. McCabe then left the meeting and drove to the job site to let the general contractor – Mr. Dill – know what was happening and that she was gone. Ms. McCabe told Mr. Dill about her concerns about Mr. Wilkerson.

- Ms. McCabe's crew was not on campus then because there was nothing to shoot; everything was that disorganized.

- Ms. McCabe left that day and returned about four days later to pack up her belongings.

37. The Court finds Ms. McCabe's testimony is not credible. Ms. McCabe's testimony was conflicting, inconsistent, dubious, and implausible. For example:

- Ms. McCabe had no hesitancy in testifying that the staff meeting occurred on May 17, as she had everything scheduled on her phone calendar, until she realized that was a Sunday. She then backpedaled and said maybe it was a different day;

- Ms. McCabe said the incident of finding Ms. Day sitting in Mr. Wilkerson's lap occurred the first week she was on campus, until she realized that meant she waited until the third week to tell Ms. Cress and Mr. Johnson about the incident. At that time, Ms. McCabe backpedaled and said she heard the breast comments the first week, saw Ms. Day sitting on Mr. Wilkerson's lap the second week, which was the impetus to have the meeting the third week.

- When pressed further about her delay in reporting the dangerous sexual-predator-pedophile, Ms. McCabe backpedaled further and said her observation of the Ms. Day on Mr. Wilkerson's lap occurred on May 15, 16, or 17.

- Ms. McCabe said she would have "sent up smoke signals everywhere," e.g., notified the police, if she had known that Ms. Cress and Mr. Johnson were "going to drop the ball." But, according to Ms. McCabe, she knew Ms. Cress and Mr. Johnson were dropping the ball because they allegedly said they chose Mr. Wilkerson. They allegedly were not going to act and were not going to fire him.

- Ms. McCabe testified that Ms. Cress and Mr. Johnson chose Mr. Wilkerson over *Ms. McCabe* – not over Ms. Day.

- Ms. McCabe wanted to have a face-to-fact meeting so Ms. Cress and Mr. Johnson would understand the severity of the situation involving Mr. Wilkerson but called a staff meeting – with Mr. Wilkerson present – to discuss the disorganization of the Project. She did not set up this supposed meeting with Ms. Cress and Mr. Johnson to discuss Mr. Wilkerson.

8

- Ms. McCabe had many years of experience as a probation officer dealing with juveniles but, as Ms. Cress questioned, why would she wait to inform anyone about what she saw?

38. Contrary to Ms. McCabe's testimony, the Court finds no such meeting (the alleged May 17 meeting) was scheduled or occurred. Instead, the Court finds that Ms. McCabe abruptly left the Project and her attorneys sent Mr. Johnson and Ms. Cress a Cease and Desist letter dated June 1, 2015.

39. The attorney's letter demanded that Academy cease "using Ms. McCabe's name or likeness in any capacity whatsoever."[2] Ms. McCabe had the letter sent because she was pulling out of a giant project which she considered disorganized, did not want to be liable for something in the future, and did not want her name and likeness on the grants for the Project.

40. The attorney's letter also mentioned a scheduled meeting which Ms. Cress and Mr. Johnson did not attend. A meeting which Ms. McCabe, of course, does not recall.

41. While Ms. McCabe did schedule a meeting with Ms. Cress and Mr. Johnson, that meeting never occurred as they were delayed due to car problems and Ms. McCabe did not wait for them to arrive.[3]

42. No meeting occurred between Ms. McCabe, Mr. Johnson, and Ms. Cress concerning Mr. Wilkerson's actions toward Ms. Day. Ms. McCabe never told Mr. Johnson and Ms. Cress what Ms. McCabe saw or that she believed Mr. Wilkerson was dangerous, a sexual predator, and a pedophile.

43. It was shortly after Ms. McCabe left the Project that Mr. Wilkerson and Ms. Day began their sexual relationship.

---

[2] Trial Ex. A-13.
[3] Even in the absence of the attorney's letter, the Court would credit Ms. Cress's and Mr. Johnson's testimony that the meeting that Ms. McCabe testified had occurred did not, in fact, occur.

### *Mr. Wilkerson's Departure and Ms. Day's Disenrollment at Academy.*

44. Mr. Wilkerson resigned from Academy on September 3, 2015, effective September 14, 2015.

45. Ms. Day disenrolled from the Academy on September 4, 2015.

### *Mr. Wilkerson's Re-employment and Ms. Cress's and Mr. Johnson's Knowledge of Ms. Day's Sexual Assault.*

46. In January 2016, Academy rehired Mr. Wilkerson for Academy's Salida, Colorado campus.

47. Ms. Day attended Rampart High School sometime after she disenrolled from the Walsenburg campus. In about February or March 2016, Ms. Day wanted to end her relationship with Mr. Wilkerson. When Mr. Wilkerson got angry over the phone, Ms. Day went to her guidance counselor and told her what happened.

48. In March 2016, the Colorado Springs Police Department contacted Ms. Cress concerning Mr. Wilkerson. At that time, Ms. Cress and Mr. Johnson learned about Mr. Wilkerson and the allegations of his sexual assault against Ms. Day.

49. On April 1, 2016, the Colorado Springs Police Department arrested Mr. Wilkerson for sexual assault on a minor by one in a position of trust.

50. Mr. Wilkerson worked at Academy's Salida campus until he was arrested for sexual assault of Ms. Day.

51. On November 29, 2016, Mr. Wilkerson pled guilty in the District Court for El Paso County to felony Sexual Assault on a Minor by a Person in a Position of Trust, and admitted he had a sexual relationship with Ms. Day while she was his student at Academy.

### *This Lawsuit and Bench Trial.*

52. The operative complaint contains five claims for relief.[4] The first claim is against Academy for sexual harassment in violation of Title IX, 20 U.S.C. § 1681(a).

53. The second and third claims are against Mr. Johnson and Ms. Cress, respectively, for violations of 42 U.S.C. § 1983. Although the complaint alleges that Mr. Johnson and Ms. Cress were mandatory reporters under C.R.S. § 19-3-304, violated Ms. Day's substantive due process and equal protection rights, and "violated clearly established statutory and constitutional rights," by the time of trial, Ms. Day's Section 1983 claim was based only on the alleged violation of Title IX.[5]

54. The fourth and fifth claims are against Mr. Johnson and Ms. Cress, respectively, for negligence. These claims do not incorporate the previous allegations of the complaint.

55. On August 9 and 10, 2021, the Court held a bench trial in this matter.

56. At trial, Ms. Day's counsel argued that Mr. Johnson and Ms. Cress were negligent per se. But this claim was not pled.

## II. CONCLUSIONS OF LAW

To the extent that any findings of fact are deemed to be conclusions of law, they are incorporated herein by reference as conclusions of law.

### A. Subject Matter Jurisdiction

The Court has subject matter jurisdiction over the Title IX and Section 1983 claims pursuant to 28 U.S.C. § 1331 (federal question) and the state law claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

---

[4] ECF Nos. 32 (unredacted) & 36 (redacted).
[5] See ECF No. 98 (confirmed scope of claim during trial preparation conference); No. 79 (same); No. 104 (confirmed during first day of bench trial)).

### B. Violation of Title IX – Against Academy

Plaintiff's first claim is against Academy for violation of Title IX. Title IX prohibits discrimination on the basis of sex at educational institutions receiving federal assistance. *See* 20 U.S.C. § 1681(a). Sexual assault may be an act of sex discrimination. *Doe v. Sch. Dist. No. 1, Denver, Colo.*, 970 F.3d 1300, 1308 (10th Cir. 2020).

In order to establish a Title IX claim of sexual harassment, a plaintiff must prove: (1) the school received federal funding, and (2) had actual knowledge of, and (3) was deliberately indifferent to (4) sexual harassment that was so severe, pervasive, and objectively offensive that it (5) deprived the student of access to the educational benefits or opportunities the school provided. *See Doe*, 970 F.3d at 1308 (student-on-student sexual harassment). The Court starts, and ends, with the requirement of actual knowledge.

Ms. Day's claim is premised on the argument – and factual allegation – that Mr. Johnson and Ms. Cress knew about Mr. Wilkerson's conduct because Ms. McCabe told them. Ms. Day argues that Ms. McCabe's testimony should be credited because it is supported by circumstantial evidence – the abrupt termination of the parties' business relationship in completing the Veteran's Project. The Court is not persuaded.

The Court finds that while Ms. McCabe knew about Mr. Wilkerson's conduct, she did not tell Mr. Johnson or Ms. Cress. The reason for the parties' abrupt termination of their working relationship is unknown as is the reason for Ms. McCabe's silence as to Mr. Wilkerson. Perhaps it was because Ms. McCabe did not want to be associated with what she perceived to be a disastrous Project on many levels. After all, Ms. McCabe claimed she called a meeting *with the staff* (including Mr. Wilkerson) because construction deadlines were being missed left and right, Academy was losing students, permits were not being pulled, and Mr. Wilkerson was not a good

12

representative. Ms. McCabe did not call a meeting *with Ms. Cress or Mr. Johnson* because Mr. Wilkerson was a sexual predator, dangerous, or preying on Ms. Day. Or perhaps Ms. McCabe intended to tell Ms. Cress and Mr. Johnson about Mr. Wilkerson at the scheduled meeting, but when the meeting did not materialize because Mr. Johnson and Ms. Cress were delayed, she decided she would abandon the Project and cut her losses. Under any scenario, what is evident is that Ms. McCabe wanted to protect her reputation. But the Court need not resolve this question. The Court finds the fact that the parties' working relationship terminated is insufficient to infer the termination must have been because Ms. McCabe told Mr. Johnson and Ms. Cress that Mr. Wilkerson was preying on Ms. Day but they allegedly would do nothing about it.

To the extent Ms. Day argued that Mr. Johnson or Ms. Cress somehow otherwise knew Mr. Wilkerson was a sexual predator or was grooming Ms. Day, e.g., that they may have seen something from the video cameras on the campus, the Court finds no evidence to support such an argument. Therefore, the Court finds in favor of Academy on this claim.

### C.  Deprivation of Rights – 42 U.S.C. § 1983 – Against Johnson and Cress

To prevail on her claims for relief against Mr. Johnson and Ms. Cress under 42 U.S.C. § 1983, Ms. Day must establish (1) she was deprived of a right secured by the Constitution or laws of the United States; and (2) the alleged deprivation was committed under color of state law. *American Mfgs. Mut. Ins. Co. v. Sullivan*, 524 U.S. 40, 49-50 (1999). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Id.* (quotation marks and citation omitted). Ms. Day's theory here is that she was deprived of the rights secured by Title IX, the elements of which are set forth above.

Ms. Day's claims under Section 1983 fail for at least two reasons. First, "Title IX reaches institutions and programs that receive federal funds, 20 U.S.C. § 1681(a), which may include

nonpublic institutions, § 1681(c), but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other *individuals*." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009) (italics added). Thus, to allow Ms. Day to use § 1983 based on a violation of Title IX against Ms. Cress and Mr. Johnson "would permit an end run around Title IX's explicit language limiting liability to funding recipients." *Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1300 (11th Cir. 2007). Therefore, even if the Court were to find that, at some point in time while Ms. Day was a student at the Walsenburg campus, Academy received federal funding, it is insufficient to render Ms. Cress or Mr. Johnson liable under Title IX.

Second, as stated above, Defendants Johnson and Cress did not have actual knowledge of Mr. Wilkerson's actions and conduct. Accordingly, the Court finds in favor of Mr. Johnson and Ms. Cress on the second and third claims for relief, respectively.

### D. Negligence

Ms. Day's fourth and fifth claims for relief are for negligence against Mr. Johnson and Ms. Cress. "To recover on a negligence claim, a plaintiff must establish that (1) the defendant owed the plaintiff a legal duty of care; (2) the defendant breached that duty; (3) the plaintiff was injured; and (4) the defendant's breach caused that injury." *N.M. by & through Lopez v. Trujillo*, 397 P.3d 370, 374 (Colo. 2017). The parties agree that Ms. Cress and Mr. Johnson owed Ms. Day a legal duty to protect and keep Ms. Day safe while she was a residential student on the Walsenburg campus. The parties disagree over whether Ms. Cress and Mr. Johnson breached that duty.

There was testimony about Academy's security and safety systems that were in place, and how imperfect they were. But the crucial question on this claim as pled and argued is, again,

whether Ms. Cress and Mr. Johnson knew about Mr. Wilkerson's inappropriate actions.[6] As the Court stated above, it finds that they did not. Accordingly, Ms. Day fails to establish her negligence claims.

### E. Negligence Per Se

This theory of civil liability is based on the violation of the Child Protection Act. Under Section 19-3-304 of the Colorado Revised Statutes, "any person specified in subsection (2)" "who has reasonable cause to know or suspect that a child has been subjected to abuse or neglect" is required to immediately, "upon receiving such information[,] report or cause a report to be made of such fact to the county department, the local law enforcement agency, or through the child abuse reporting hotline." § 19-3-304(1)(a) (2015). *See also Heotis v. Colo. State Bd. of Educ.*, 457 P.3d 691, 696 (Colo. App. 2019) (same). Persons specified in subsection (2) include a "[p]ublic or private school official or employee." § 19-3-304(2)(l) (2015).

Although the complaint contains allegations that Academy, Ms. Cress, and Mr. Johnson are mandatory reporters, those allegations are contained, either directly or incorporated by reference, as support for claims based on violations of Title IX and Section 1983 (first through third claims). There are no claims for negligence per se against any Defendant. Further, the negligence claims against Ms. Cress and Mr. Johnson do not incorporate by reference the prior allegations. Thus, the Court finds that no negligence per se claim based on the Child Protection Act was pled.

Ms. Day argued, in closing, maybe there was a pleading error. If so, Ms. Day requested that her pleadings be amended to include a negligence per se claim. Ms. Day's conclusory oral

---

[6] There was testimony, and a dispute over, whether Academy conducted a fingerprint background check on Mr. Wilkerson and when it was required to do so. The Court need not resolve this issue because Ms. Day's claims are not based on whether this was done. As Ms. Day's counsel argued in closing, "the real crux of this case comes down, did they [Ms. Cress and Mr. Johnson] know [about Mr. Wilkerson]?"

request, without any supporting authority as to the requirements for amendment and how they are met here, is insufficient to establish the Court should grant leave to amend now. Moreover, any amendment would be futile.

Ms. Day's claim is, again, premised on the argument that Mr. Johnson and Ms. Cress knew about Mr. Wilkerson's conduct because Ms. McCabe told them. But the Court finds that while Ms. McCabe knew about Mr. Wilkerson's conduct, she did not tell Mr. Johnson or Ms. Cress. And, further, the Court finds there is insufficient evidence that Mr. Johnson or Ms. Cress otherwise suspected that Mr. Wilkerson was engaging in inappropriate conduct. Accordingly, even if Ms. Day were allowed to include a claim for negligence per se, the Court would still find in favor of Mr. Johnson and Ms. Cress. *See* C.R.S. § 19-3-304(1)(a) (imposing duty on mandatory reporters who have "reasonable cause to know or suspect that a child has been subjected to abuse or neglect").

### III.   ORDER OF JUDGMENT

Ms. Day was wronged, that much everyone agrees. But the claims Ms. Day made for the remedies she seeks are not supported by the evidence. If Ms. McCabe told Ms. Cress and Mr. Johnson what she knew about Mr. Wilkerson, instead of abandoning the Veteran's Project without a word, maybe there would have been a remedy for the wrong Ms. Day has suffered.[7] But the Court finds Ms. McCabe did not do so. Accordingly, based on the foregoing, the Court **FINDS** and **ORDERS** as follows:

(1) That on the First Claim for Relief, the Court finds in favor of Defendant Academy and against Plaintiff Day;

---

[7] Assuming Ms. Day also established all the other elements of her claims.

(2) That on the Second and Fourth Claims for Relief, the Court finds in favor of Defendant Johnson and against Plaintiff Day;

(3) That on the Third and Fifth Claims for Relief, the Court finds in favor of Defendant Cress and against Plaintiff Day;

(4) That Defendants Johnson and Cress are awarded costs and shall within 14 days of the date of this Order file a bill of costs, in accordance with the procedures under Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1, which shall be taxed by the Clerk of the Court;

(5) That the Clerk of the Court shall enter JUDGMENT in favor of Defendants and against Plaintiff; and

(6) That the Clerk of the Court shall close this case.

DATED this 20th day of September, 2021.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge